UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

SIDNEY E. PURDIE,

                                        Plaintiff,

          vs.                                                    9:09-CV-971
                                                                 (GTS/ATB)
HAROLD D. GRAHAM, *et al*,

                                        Defendants.

_____

## REPORT-RECOMMENDATION

          This matter has been referred to me for Report and Recommendation pursuant

to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).  Liberally construed, the

amended complaint alleges that defendants retaliated against plaintiff, failed to protect

him from an assault by another inmate, were deliberately indifferent to a serious

medical need, and denied him due process rights while plaintiff was an inmate in the

custody of the Department of Correctional Services ("DOCS") at Auburn Correctional

Facility ("Auburn").  (Dkt. No. 20).

          Presently before this court is defendants' motion to dismiss certain defendants

and claims pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 32).  Plaintiff has filed two

responses in opposition.[1]  (Dkt. Nos. 36, 50).  For the following reasons, this court

recommends granting defendants' motion.

## I.      Facts and Contentions

          Plaintiff alleges that on July 19, 21, and 23, 2009, he wrote "complaints"

---

          [1] Plaintiff's Second Response (Pl.'s Second Resp.) (Dkt. No. 50), was filed after defendant
Karen Bellamy joined the motion to dismiss (Dkt. No. 32).

regarding Correctional Officer (C.O.) Vosberg "for trying to involve me into gang and drug activities." (Compl. ¶ 6). Plaintiff alleges that C.O. Vosberg kept asking "where the weapons are hidden and who had the drugs." (Am. Compl. ¶ I.a). Plaintiff alleges that C.O. Vosberg "denied me chow and recreation for a week straight," so plaintiff wrote to Superintendent Graham. (Am. Compl. ¶ I.d).

Plaintiff spoke with C.O. Conners, who is usually C.O. Vosberg's relief officer, about why Conners also refused to let plaintiff out for chow and recreation. (Am. Compl. ¶ I.f–g). Plaintiff alleges that Conners told him that plaintiff was not complying with Vosberg's rules, that Conners would "teach" plaintiff about writing up Conner's co-worker, and that Vosberg "runs the gangs and drugs around the facility." (Am. Compl. ¶ I.g–h). Plaintiff also alleges that C.O. Vosberg told plaintiff to "stay out of [C.O. Vosberg's] business and not intervene in his drug move." (Am. Compl. ¶ I.i).

Plaintiff alleges that on August 4, 2009, around the time for noon chow, his cell was opened up by C.O. Guzewicz, and inmate Zebrowski came in plaintiff's cell and stabbed him above his left eye, his neck twice, his head once, his left arm, and his right leg twice. (Compl. ¶ 6, Am. Compl. ¶ III.1). C.O. Guzewicz noticed that plaintiff was not leaving his cell, and after investigating, saw plaintiff and inmate Zebrowski fighting. (Am. Compl. ¶ III.2). Guzewicz gave numerous orders to break up the fight. (Am. Compl. ¶ III.2). Officers Ramsey and Blaisdell assisted in stopping the altercation. (Am. Compl. ¶ III). Some time later, plaintiff "was informed" that C.O. Vosberg allegedly paid inmates cigarettes to stab petitioner in retaliation for the

grievances plaintiff had submitted against Vosberg and Conners.  (Am. Compl. ¶ IV).

Plaintiff was sent to medical, but refused to be stitched up "because the doctor wanted to stick the needle in the wound and it scared me so much."  (Am. Compl. III.7).  Plaintiff requested to be seen by an "outside doctor," but was refused.  (Compl. ¶ 6; *see also* Am. Compl. ¶ III.6).  A weapon was found in plaintiff's cell, so after he was treated by medical staff, he was sent to the Special Housing Unit (SHU).  (Am. Compl. III.8).

Plaintiff also requested emergency sick call while he was in the Auburn SHU, and he saw Nurse Quinn.  (Am. Compl. ¶ V).  Nurse Quinn allegedly told plaintiff to "shut up and don't say any more about [his] injuries."  (Am. Compl. ¶ V.b).  Plaintiff "refused to stay quiet about [his] injuries" and Nurse Quinn allegedly had him placed in OMH[2] by reporting that plaintiff was trying to kill himself.  (Am. Compl. ¶ V.c).

As a result of the August 4, 2009 altercation and discovery of a weapon in plaintiff's cell, a Tier III disciplinary hearing was held, conducted by Captain McCarthy, who removed plaintiff from the hearing after he objected that his witnesses were not able to testify at the hearing for "security reasons."  (Am. Compl. ¶ IX). Petitioner was found guilty, and received 18 months in the SHU and a loss of all privileges.  (Am. Compl. ¶ IX).

## II.  <u>Motion to Dismiss</u>

Defendants McCarthy, Graham, Ramsey, Blaisdell, Bellamy, and Quinn move to dismiss the complaint, arguing that plaintiff has failed to state a claim against them

---

[2] Office of Mental Health (*See* Pl.'s Resp. 8).

based on due process, failure to protect, and deliberate indifference to a serious medical need.  (Dkt. No. 32).[3]  To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice.  *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).  Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995).  The court must heed its particular obligation to treat *pro se* pleadings with liberality.  *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

## III.   **Due Process**

Plaintiff claims that Captain McCarthy violated his due process rights during

---

[3] Defense counsel has not moved to dismiss the claims against defendants Vosberg, Conners, Gusewicz, or Graf—a Sergeant at Auburn who responded to the assault of plaintiff on August 4, 2009, who ordered the subsequent search of plaintiff's cell, and who allegedly caused plaintiff to be confined in the SHU after a weapon was found in his cell.  (Am. Compl. ¶¶ III.3, VIII).

the Tier III disciplinary hearing, when plaintiff was apparently removed after objecting because his witnesses were not allowed to testify.  (Am. Comp. ¶ IX).  For the reasons set forth below, this court finds that the due process claim should be dismissed.

### A.    Applicable Law

To prevail on a procedural due process claim under section 1983, a plaintiff must show that he possessed a protected property or liberty interest and that he was deprived of that interest without being afforded sufficient procedural safeguards.  *See Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir. 2000) (liberty interest); *Hynes v. Squillace,* 143 F.3d 653, 658 (2d Cir. 1998).  Due process generally requires that a state afford individuals "some kind of hearing" prior to depriving them of a liberty or property interest.  *DiBlasio v. Novello,* 344 F.3d 292, 302 (2d Cir. 2003).

In *Wolff v. McDonnell*, 418 U.S. 539, 563–64 (1974), the Supreme Court held that due process requires advance notice of the charges against the inmate, and a written statement of reasons for the disposition.  The inmate should also have the ability to call witnesses and present documentary evidence, subject to legitimate safety and correctional goals of the institution.  *Id*. at 566.  Finally, the inmate is entitled to a fair and impartial hearing officer, and the hearing disposition must be supported by "some" or "a modicum" of evidence.  *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (some evidence standard); *McCann* v. Coughlin, 698 F.2d 112, 121–22 (2d Cir. 1983) (fair and impartial hearing officer).  Violations of state regulations with respect to disciplinary hearings do not, by themselves, necessarily rise to the level of

5

constitutional violations.  *See Young v. County of Fulton*, 160 F.3d 899, 902 (2d Cir.

1998) (violation of state law is not the "benchmark" for determining whether a

constitutional violation has occurred); *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995)

(state law violation does not necessarily rise to the level of a constitutional violation).

### B.    Application

Plaintiff argues that he was denied the right to "defend himself fully" at the Tier

III hearing.  (Pl.'s Resp. p. 5).  However, plaintiff makes no factual allegations

indicating that he was prevented from presenting a defense or that Captain McCarthy

otherwise denied plaintiff due process in his Tier III hearing.  Plaintiff states that his

witnesses were not allowed to testify at his Tier III hearing "because of security

reasons," which is an acceptable reason not to call an inmate's witnesses.  *See Wolff v.*

*McDonnell*, 418 U.S. at 556 (1974); *see also Kingsley v. Bureau of Prisons*, 937 F.2d

26, 30 (2d Cir. 1991).  In any event, plaintiff acknowledges that his witnesses did, in

fact, testify on the record in the presence of Captain McCarthy, albeit not in plaintiff's

presence.  (Pl.'s Second Resp. ¶ 10).  Taking testimony from witnesses out of

plaintiff's presence does not violate the due process requirement.  *Bolden v. Alston*,

810 F.2d 353, 358 (2d Cir. 1987).  Plaintiff also admits the reason he was removed

from the hearing:  he was irate and would not be quiet.  (Pl.'s Resp. pp. 3, 5).

Accordingly, plaintiff's claim against Captain McCarthy should be dismissed.

### IV.    Personal Involvement

Personal involvement is a prerequisite to the assessment of damages in a section

1983 case, and *respondeat superior* is an inappropriate theory of liability.  *Wright v.*

*Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, __ U.S. __, 129 S. Ct. 1937 (U.S. 2009).

### A.   Application

#### 1.   Defendant Graham

Plaintiff has failed adequately to allege personal involvement on the part of defendant Graham, the Superintendent of Auburn. Plaintiff states that Superintendent Graham assigned Captain McCarthy to conduct plaintiff's Tier III hearing, but does not indicate that defendant Graham would have had any reason to think Capt. McCarthy would infringe plaintiff's constitutional rights. In fact, as noted above,

plaintiff does not state a viable claim that defendant McCarthy violated plaintiff's due process rights in connection with the disciplinary hearing.

Plaintiff alleges that Superintendent Graham had been "notified" through grievance appeals of plaintiff's complaints regarding C.O. Vosberg. (Pl.'s Resp. p. 6; *see also* Am. Compl. at II). However, the mere fact that a prisoner writes to supervisory officials about alleged mistreatment does not justify holding those supervisory officials liable under Section 1983. *Liner v. Goord*, 310 F. Supp. 2d 550, 555 (W.D.N.Y. 2004) (stating that the fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement); *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (stating that letters to and a response from an official did not demonstrate personal involvement). Plaintiff's argument that "Superintendent Graham should not be dismissed  because he was the sole chief to give order at the Auburn Correctional Facility" merely relies on a *respondeat superior* theory, which is not a proper basis for liability under Section 1983. (Pl.'s Resp. p. 6).

Plaintiff has failed to allege facts indicating that defendant Graham implemented any policy or custom which resulted in a violation of his constitutional rights, or that Superintendent Graham he was grossly negligent in managing any official that he supervised. With respect to the alleged assault, plaintiff can not show the personal involvement of Superintendent Graham based upon his failure to remedy a known wrong or adequately supervise his staff, based on a single incident of alleged excessive force. *See, e.g., Harnett v. Bar*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) (stating that the appropriate guiding principle for assessing personal responsibility is

to determine whether the supervisory official was presented with an "ongoing" violation that he or she could remedy directly). Thus, this court must recommend dismissal of plaintiff's claims against defendant Graham for lack of personal involvement.

### 2.  Defendants Ramsey and Blaisdell

As to Officers Ramsey and Blaisdell, plaintiff alleges only that they were called to assist on August 4, 2008, when he was stabbed in his cell, and one of them retrieved a weapon from inside plaintiff's cell.[4] (Am. Compl. ¶ III, p. 9). Plaintiff does not appear to claim that these defendants were involved in instigating the assault or otherwise violated his constitutional rights. Rather, plaintiff wishes them to "testify at trial upon what took place on August 4th, 2008." (Pl.'s Resp. p. 7). Officers Ramsey and Blaisdell do not need to be named defendants in order to testify in the event of a trial. Accordingly, plaintiff's claims as to Officers Ramsey and Blaisdell should be dismissed.

### 3.  Defendant Bellamy

Plaintiff alleges that defendant Bellamy, Director of the Department of Correctional Services Central Office Review Committee, "is solely at fault and responsible for filing the final level for review of the inmates grievances[.]" (Pl.'s Second Resp. ¶ 2). Plaintiff claims that, because she was involved in processing his

---

[4] Plaintiff states that Ramsey "was ordered to search my cell A-7-4 and a weapon was found on the floor under my bed." (Am. Compl. ¶ III.9). Plaintiff later states that "C.O. Blaisdell was the office[r] I believe to retrieve the weapon." (Am. Compl. p. 9). Either way, helping to break up a fight among inmates, and subsequently retrieving a weapon from a cell is not connected with any constitutional violation plaintiff alleges.

grievance, defendant Bellamy is responsible for DOCS' alleged failure to thoroughly investigate plaintiff's complaints regarding C.O. Vosberg.  (Pl.'s Second Resp. ¶¶ 4–5).  Plaintiff also alleges that defendant Bellamy "failed to alert" Superintendent Graham of C.O. Vosberg's "harassment" of plaintiff, and suggests that his makes her liable for the subsequent assault.  (Pl.'s Second Resp. ¶¶ 7–8).

In the absence of any factual allegations indicating that defendant Bellamy had any further involvement in the underlying events, her limited role in processing plaintiff's grievance is no basis for any Section 1983 claim against her.  *Marrero v. Kirkpatrick*, 659 F. Supp. 2d 422, 427 (W.D.N.Y. 2009).  To the extent she failed to cause an investigation of plaintiff's complaints, that would not give rise to a constitutional claim.  *Id.* (citing *Swift v. Tweddell*, 582 F. Supp. 2d 437, 445–46 (W.D.N.Y. 2008)).  In any event, plaintiff alleges nothing to indicate that plaintiff's complaint of harassment gave defendant Bellamy any reason to anticipate that he would later be assaulted.  Nor was it necessary for defendant Bellamy to alert Superintendent Graham; plaintiff acknowledges that he had already complained to and appealed grievances to Superintendent Graham (Am. Compl. ¶ II), and that the Superintendent assigned a sergeant to investigate plaintiff's claims of harassment. (Am. Compl. ¶ II).  Plaintiff has failed adequately to allege personal involvement on the part of defendant Bellamy, and claims against her should be dismissed.

## V.   **Deliberate Indifference to Medical Needs**

Plaintiff appears to argue that Nurse Quinn was deliberately indifferent to plaintiff's serious medical need when she allegedly told plaintiff that he was "abusing

sick call." (Pl.'s Resp. p. 8).

### A.   Legal Standards

Deliberate indifference to a convicted prisoner's serious medical needs constitutes cruel and unusual punishment, in violation of the Eighth Amendment, as made applicable to the states through the Fourteenth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003).  The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.*

The objective prong of the standard is satisfied "when (a) the prisoner was 'actually deprived of adequate medical care,' meaning prison officials acted unreasonably in response to an inmate health risk under the circumstances, and (b) 'the inadequacy in medical care is sufficiently serious.' *Bellotto v. County of Orange*, 248 Fed. Appx. 232, 236 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)).  If the "unreasonable care" consists of a failure to provide any treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003). When a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," the court must focus on the seriousness of the particular risk of harm that resulted from the challenged delay or interruption, rather than the prisoner's underlying medical condition alone." *Id*. at 185.  The standard for

11

determining when a deprivation or delay in a prisoner's medical need is sufficiently serious, contemplates a condition of urgency that may result in degeneration of the patient's condition or extreme pain. *Bellotto v. County of Orange*, 248 Fed. Appx. at 236 (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998) and *Smith v. Carpenter*, 316 F.3d at 187 (actual medical consequences are highly relevant)).

The subjective prong of the deliberate indifference test is satisfied when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). A plaintiff is not required to show that a defendant acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result," but must show that the official was aware of facts from which one could infer that "a substantial risk of serious harm" exists, and that the official drew that inference. *Id*. at 835, 837.

A plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Even if the medical judgments of prison staff amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Ross v. Kelly*, 784 F. Supp. 35, 44-45 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (1992) (table); *Kellam v. Hunt*, 9:04-CV-1225 (LEK/GJD), 2007 WL 2764814, at *6 (N.D.N.Y. Sept. 20, 2007).

### B.    Application

The amended complaint alleges that the plaintiff was provided medical treatment immediately after his injury, although his request to be sent to an outside hospital was denied.  (Am. Compl. III).  Plaintiff also suggests that he was denied emergency sick treatment, at some point, by Nurse Quinn.  Plaintiff claims that Nurse Quinn told the plaintiff to "shut up about his injuries," and said that he wouldn't need medical care if he had not fought with another inmate.  (Am. Compl. V).  Finally, plaintiff alleges that, because of his continuing complaints about his injuries, Nurse Quinn placed the plaintiff in the care of the Office of Mental Health, which continued to treat plaintiff after he left Auburn.

While plaintiff may have disagreed with Nurse Quinn's medical judgment as to his condition and the level of care he required on one particular occasion, he fails to state a claim of deliberate indifference, given the medical care that he admittedly received for his injuries.  *See Sonds*, 151 F. Supp. 2d at 312 (disagreements over forms of treatment implicate medical judgments and not the Eighth Amendment) (citing *Estelle*, 429 U.S. at 107) (inmate who alleged doctors did not credit his repeated assertions that severe back pain should preclude him from manual labor did not state a claim for deliberate indifference where the medical staff repeatedly saw and treated him, even if their lack of diagnosis and inadequate treatment constituted malpractice).[5]

---

[5] *See also Brown v. White*, 9:08-CV-200 (GLS/ATB), 2010 WL 985184, at *11 (N.D.N.Y. Mar. 15, 2010) (even if nurse had been completely dismissive of plaintiff, who sought emergency medical treatment based on complaints of back pain that the nurse did not view as an emergency, it would not constitute deliberate indifference); *Savage v. Brue*, 9:05-CV-857, 2007 WL 3047110  at *9 (N.D.N.Y. Oct. 18, 2007) (nurse refused pain medication to an inmate

Even if Nurse Quinn made the harsh comments plaintiff alleges, that would support an Eighth Amendment claim for deficient medical care.  See, e.g., *Murray v. Michael*, 9:03-CV-1434, 2005 WL 2204985, at *13–14 (N.D.N.Y. Sept. 7, 2005) (Report-Recommendation) (alleged threats from a doctor to an inmate patient to stop "abusing sick call privileges" did not rise to the level of deliberate indifference).

The decision not to refer plaintiff to an outside hospital, and Nurse Quinn's decision that he required mental health treatment does not constitute deliberate indifference, even if contrary to plaintiff's preferences.  The fact that plaintiff admittedly continued to receive mental health treatment following his transfer from Auburn (Am. Compl. ¶ V) undercuts plaintiff's conclusory allegation that Nurse Quinn referred him to OMH for any malicious reason.  Accordingly, plaintiff's claim as to Nurse Quinn should be dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss  (Dkt. No. 32) be **GRANTED**, and that the claims in the amended complaint against defendants McCarthy, Graham, Ramsey, Blaisdell, Bellamy, and Quinn be **DISMISSED IN THEIR ENTIRETY.**[6]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

---

confined in a special housing unit for 48 hours with no mattress who complained of "extreme" back and neck pain due to a recent injury, and advised the inmate that he would need to "adjust to it"; while the nurse may have been negligent in her care, she was not reckless or deliberately indifferent).

[6] All claims against defendants Conners, Gusewicz, Graf, and Vosberg remain.

fourteen days within which to file written objections to the foregoing report.  Such

objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v.*

*Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: January 19, 2011

Hon. Andrew T. Baxter
U.S.  Magistrate Judge